UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CLAUDIA H. McPHERSON,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,[1]<br><br>    Defendant. | No. CV-06-0223-MWL<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-motions for summary judgment, noted for hearing without oral argument on March 5, 2007. (Ct. Rec. 12, 15). Plaintiff Claudia H. McPherson ("Plaintiff") filed a reply brief on February 27, 2007. (Ct. Rec. 17). Attorney Maureen Rosette represents Plaintiff; Special Assistant United States Attorney Jeffrey H. Baird represents the Commissioner of Social Security ("Commissioner"). The parties have consented to proceed before a magistrate judge. (Ct. Rec. 7). After reviewing

///

---

[1] As of February 12, 2007, Michael J. Astrue succeeded Defendant Acting Commissioner Linda S. McMahon as the Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d)(1), Commissioner Michael J. Astrue should be substituted as Defendant, and this lawsuit proceeds without further action by the parties. 42 U.S.C. § 405(g).

- 1 -

the administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 15) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 12).

## JURISDICTION

On November 15, 2002, Plaintiff protectively filed an application for Supplemental Security Income ("SSI") benefits, alleging disability since January 1, 1998, due to fatigue, throbbing legs from varicose veins, and joint pain. (Administrative Record ("AR") 75-78, 92). Plaintiff's application for SSI was denied initially and on reconsideration.

Hearings were held before Administrative Law Judge ("ALJ") Paul L. Gaughen on September 1, 2004, March 2, 2005 and July 6, 2005, at which time testimony was taken from Plaintiff, medical expert Ronald M. Klein, M.D., and vocational experts Daniel McKinney and Deborah Lapoint, Ph.D. (AR 309-385). On January 23, 2006, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 18-28). The Appeals Council denied a request for review on July 19, 2006. (AR 6-9). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on August 9, 2006. (Ct. Rec. 1).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner and will only be summarized here. Plaintiff was 53 years old on the date of the ALJ's decision, has a high school

///

equivalency (GED) education and has past work experience as a janitor/custodian/industrial cleaner and a sandwich shop worker. (AR 19).

Plaintiff testified at the administrative hearing held on September 1, 2004, that she has five children, but only the eight-year-old currently resided with her. (AR 314). She stated that she had used Heroin about eight years prior to the administrative hearing, but was able to quit after undergoing a Methadone program. (AR 329). She indicated she also quit drinking alcohol about three years prior to the administrative hearing but then relapsed a year later for approximately a month. (AR 329-330). At a supplemental hearing held on March 2, 2005, Plaintiff testified that she relapsed by drinking alcohol over a four to six month period in 2003. (AR 351-352).

Plaintiff stated that her most severe medical problem was fatigue as a result of her Hepatitis C. (AR 318). She indicated that fatigue caused her to spend most of the day in bed. (AR 318). She stated that she lays down as often as possible and at least 15 to 20 minutes every hour. (AR 319). Plaintiff testified that she additionally has stiffness, pain and swelling in all of her joints. (AR 319-320). Plaintiff testified that she also has pain as a result of varicose veins in her feet and legs. (AR 320). She wears support hose to alleviate the pain in her legs from the varicose veins. (AR 321-322). Elevating her legs also helps with the pain and swelling in her legs. (AR 322). She indicated that she additionally has problems with her memory. (AR 327).
///

Plaintiff testified that she can sit in a chair comfortably for about 10 to 15 minutes at a time, stand comfortably in one position for about five minutes, and could walk about one block at one stretch. (AR 323-324). She indicated that she could lift and carry about 10 pounds and that she has difficulty climbing stairs and bending over. (AR 324). She stated that she also has difficulty getting to sleep at night and difficulty with sleep in general. (AR 325-326). At the July 6, 2005 supplemental hearing, Plaintiff indicated that her condition had gotten worse. (AR 379). Specifically, Plaintiff testified that she experiences pain and swelling in her hands and that she constantly drops things as a result. (AR 379).

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work he has performed in the past. If Plaintiff is able to perform his previous work, he is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of his residual functional capacity and his age, education and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137 (1987).
///

1  The initial burden of proof rests upon Plaintiff to establish
2  a *prima facie* case of entitlement to disability benefits.
3  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v.*
4  *Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is
5  met once Plaintiff establishes that a physical or mental
6  impairment prevents him from engaging in his previous occupation.
7  The burden then shifts to the Commissioner to show (1) that
8  Plaintiff can perform other substantial gainful activity and (2)
9  that a "significant number of jobs exist in the national economy"
10 which Plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498
11 (9th Cir. 1984).

## STANDARD OF REVIEW

13  Congress has provided a limited scope of judicial review of a
14 Commissioner's decision.  42 U.S.C. § 405(g).  A court must uphold
15 the Commissioner's decision, made through an ALJ, when the
16 determination is not based on legal error and is supported by
17 substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995
18 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.
19 1999).  "The [Commissioner's] determination that a plaintiff is
20 not disabled will be upheld if the findings of fact are supported
21 by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572
22 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence
23 is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d
24 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.
25 *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989);
26 *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d
27 573, 576 (9th Cir. 1988).  Substantial evidence "means such
28 evidence as a reasonable mind might accept as adequate to support

a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## **ALJ'S FINDINGS**

The ALJ found at step one that there has been no indication that Plaintiff has engaged in any substantial gainful activity

///

///

since 1995.[2] (AR 19). At step two, the ALJ determined that Plaintiff has the severe impairments of grade I varicose veins, right greater than left, without ulceration, induration or inflammatory changes and Hepatitis C, without evidence of jaundice or hepatomegaly and current viral load extremely small. (AR 22). The ALJ concluded that Plaintiff does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments. (AR 22).

The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary, light and medium exertion work. (AR 26). He found that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently; could sit, stand or walk six hours out of an eight hour day with normal breaks; and is moderately limited in her ability to consistently perform production level work involving detailed instructions and procedures. (AR 26).

At step four of the sequential evaluation process, the ALJ determined that, based on the testimony of the medical and vocational experts and Plaintiff's age, educational background, work experience and RFC, Plaintiff could perform her past relevant work as a janitor/custodian/industrial cleaner and a sandwich shop worker. (AR 26-27). Accordingly, the ALJ determined at step four of the sequential evaluation process that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 27-28).

///

---

[2] However, the undersigned finds it significant to note that Plaintiff's November 29, 2002 Daily Activities Questionnaire form indicates that her normal day activities consist of going to work "about 3 to 4 times a week." (AR 86).

- 8 -

**ISSUES**

Plaintiff contends that the Commissioner erred as a matter of law. Specifically, she argues that:

1. The ALJ erred by rejecting Dr. Orenstein's findings and by giving more weight to the opinions of Dr. Rose; and

2. The ALJ erred by relying on the medical expert's opinion over the opinion of examining physician, Dennis R. Pollack, Ph.D., to conclude that Plaintiff only had one non-exertional mental limitation.

This Court must uphold the Commissioner's determination that Plaintiff is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

**DISCUSSION**

**A. Physical Limitations**

Plaintiff argues that she is more limited from a physical standpoint than as determined by the ALJ in this case. (Ct. Rec. 13, pp. 14-18). Plaintiff specifically asserts that the ALJ failed to provide proper reasoning for rejecting the medical opinions of her treating physician, Beth J. Orenstein, M.D., and incorrectly relied upon the opinions of an examining physician, Dr. Robert Rose, whose examination lasted a total of only nine minutes. (Ct. Rec. 13, pp. 15-18). The Commissioner responds that the ALJ properly evaluated the medical evidence of record and properly took into account those limitations for which there was record support and that did not depend on Plaintiff's non-credible subjective complaints. (Ct. Rec. 16, pp. 7-15).

///

The courts distinguish among the opinions of three types of physicians: treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater,* 81 F.3d 821, 839 (9th Cir. 1996). A treating physician's opinion is given special weight because of his familiarity with the claimant. *Fair v. Bowen,* 885 F.2d 597, 604-05 (9th Cir. 1989). Thus, more weight is generally given to a treating physician than an examining physician. *Lester*, 81 F.3d at 830. However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen,* 881 F.2d 7474, 751 (9th Cir. 1989) (citations omitted).

The ALJ examined the evidence of record and determined that Plaintiff has the RFC to perform up to medium exertion level work. (AR 23-26). In making this RFC finding, the ALJ specifically rejected the July 1, 2005 assessment of Dr. Orenstein, finding that her assessment was inconsistent with the findings of the consultative examiner, as well as the Plaintiff's treatment records, and may have been influenced, at least in part, by Plaintiff's non-credible self-reports. (AR 24). In making his RFC determination, the ALJ instead gave more weight to the opinion of examining physician Dr. Rose. (AR 23-24).

On July 1, 2005, Dr. Orenstein filed out a form entitled Medical Source Statement of Ability to do Work-Related Activities (Physical). (AR 262-265). The check-box form indicated that Plaintiff could occasionally lift and/or carry 10 pounds, frequently lift and/or carry 10 pounds, stand and/or walk less

than two hours in an eight-hour workday, sit less than about six hours in an eight-hour workday (and must periodically alternate sitting and standing to relieve pain or discomfort), and was limited in pushing and pulling in both the upper and lower extremities. (AR 263-264). The check-box form additionally indicated that Plaintiff could never climb ramps, stairs, ladders, ropes or scaffolds, crawl or stoop and could only occasionally balance, kneel and crouch. (AR 264). Dr. Orenstein also marked that Plaintiff had manipulative limitations. (AR 265). Despite being directed in various portions of the form to explain the precise maladies that limit Plaintiff, no explanation was provided by Dr. Orenstein on the form. (AR 263-265). A check-box form is entitled to little weight. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (stating that the ALJ's rejection of a check-off report that did not contain an explanation of the bases for the conclusions made was permissible). Dr. Orenstein merely checked the boxes and did not provide a written explanation for her findings on the form. This alone provides a basis for the ALJ's rejection of the check-box report.

The ALJ also noted that Dr. Orenstein "may have been influenced, at least in part, by the claimant's self-reports which the [ALJ] does not find credible." (AR 24). The ALJ reviewed the record, considered the testimony, and appropriately concluded that Plaintiff's allegations of total disability were not fully credible. (AR 26). Plaintiff does not contest the ALJ's credibility determination in this matter. (Ct. Rec. 13). A

///
///

physician's opinion may be disregarded when it is premised on the properly rejected subjective complaints of Plaintiff. *See, Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ further noted that Dr. Orenstein's check-box form opinions were not supported by the Plaintiff's treatment records. (AR 24). Plaintiff's treating records displayed only mild symptoms and/or improved functioning following surgery or treatment. (Ct. Rec. 16, p. 13); (AR 24, 127-133, 134-135, 140, 160-163, 167, 185-186, 197-198, 203). Several reports refer to Plaintiff as a well-developed, well-nourished, rather healthy-appearing adult female in no acute distress (AR 127, 128, 129, 141, 160, 192, 197-198, 200) and indicate that Plaintiff looks well and moves around easily (AR 134). On October 21, 2003, K. Stephen Olson, M.D., opined that there was no restriction for full activity. (AR 203). Dr. Orenstein's July 2005 report is inconsistent with the weight of the record evidence.

The undersigned finds it significant to note that, with respect to the July 1, 2005 findings, it would be reasonable to conclude that Dr. Orenstein may not have been in the position of a typical treating physician with patient familiarity at that time. At the supplemental hearing held on March 2, 2005, Plaintiff testified that Dr. Orenstein had only seen her maybe once in the past two years. (AR 357). This statement lends support for limiting the weight given to the July 2005 findings of Dr. Orenstein.

The ALJ also indicated that the July 1, 2005 check-box report was specifically at variance with a consultative examining physician's opinion. (AR 24). If the treating physician's

1 opinion is contradicted by another physician, the Commissioner
2 must provide only specific and legitimate reasons, as opposed to
3 clear and convincing reasons, for rejecting the opinion.  *Lester*,
4 81 F.3d at 830.
5     On October 20, 2004, Plaintiff was examined by Robert J.
6 Rose, M.D.  (AR 229-237).  Dr. Rose noted that, on physical exam,
7 Plaintiff exhibited significant behaviors consistent with profound
8 functional impairment; however, he also noted that "this does not
9 correlate to activities, behaviors and posturing following her
10 leaving the office and getting to the car with her friend."  (AR
11 230).  Dr. Rose diagnosed Grade I vericose veins and Hepatitis C
12 with a current documented viral load extremely small.  (AR 231).
13 Dr. Rose filled out a medical source statement of ability to do
14 work-related activities (physical) and found that Plaintiff had no
15 exertional limitations.  (AR 232-233).  Dr. Rose did find that
16 Plaintiff could only occasionally climb ramps, stairs, ladders,
17 ropes and scaffolds, balance and stoop and would be restricted
18 from environmental hazards such as machinery and heights and
19 fumes, odors, chemical and gases.  (AR 233, 235).
20     Although Plaintiff argues that Dr. Rose's report should not
21 be considered substantial evidence because the exam was short in
22 duration, the undersigned, in accord with the ALJ, finds this
23 argument unpersuasive.  As noted by the ALJ, Dr. Rose had access
24 to other evaluations and examining tools in making his assessment,
25 such as prior treatment records and test results, in addition to
26 the findings from his examination.  (AR 25).  Moreover, as noted
27 by the Commissioner, beyond the actual length of the examination,
28 there is no contention that Dr. Rose's examination lacked

objectivity or thoroughness. Not only did Dr. Rose fill out a form recording Plaintiff's functional capacity following his examination, he also provided a "Range of Joint Motion Evaluation Chart" with his report. (AR 236-237). The undersigned finds Plaintiff's argument that Dr. Rose's assessment should not be considered substantial evidence is without merit.

The ALJ provided proper rationale for rejecting the July 2005 report of Dr. Orenstein. As noted above, Dr. Orenstein's report was a check-box form that provided no explanation or basis for the conclusions made on the form. Dr. Orenstein's opinion may have also been influenced by the claimant's self-reports and the ALJ appropriately found Plaintiff to be not fully credible in this case. (AR 26). Furthermore, Dr. Orenstein's opinion was not consistent with Plaintiff's treating records and was at variance with the opinion of consultative examiner Dr. Rose. The undersigned finds that the ALJ properly relied upon the assessment of the examining physician, Dr. Rose, whose opinion was supported by the weight of the record evidence in this case. Dr. Rose's opinion accurately reflects the evidence of record and was properly deemed more persuasive by the ALJ in this case.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities. *Magallanes*, 881 F.2d at 751. If evidence supports more than one rational interpretation, the Court must uphold the decision of the ALJ. *Allen*, 749 F.2d at 579. It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. The Court thus has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not

substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g). In this case, the ALJ provided appropriate rationale for rejecting the check-box form opinions of Dr. Orentein and properly relied on Dr. Rose's findings in making his RFC determination. Accordingly, the undersigned finds that the ALJ's physical RFC determination is in accord with the substantial weight of the record evidence and free of error in this case.

**B.   Mental Limitations**

Plaintiff also contends that she is more limited from a psychological standpoint than what the ALJ determined in this case. (Ct. Rec. 13, pp. 19-20). Plaintiff asserts that a psychological evaluation completed by Dr. Pollack should have been given greater weight than the opinions of medical expert Dr. Klein. (*Id*.) The Commissioner argues that the ALJ properly evaluated the medical evidence and properly relied on the opinions of Dr. Klien in finding that Plaintiff's only non-exertional impairment was a moderate limitation with her ability to consistently perform production level work involving detailed instructions and procedures. (Ct. Rec. 16, pp. 15-16).

On December 7, 2004, Plaintiff was examined by Dennis R. Pollack, Ph.D. (AR 238-246). Dr. Pollack reported that Plaintiff had been married five times, has five children, has a very limited work history over a 15 year period, and has had Hepatitis C for at least 10 years and believes that she contracted it from one of her sexual partners. (AR 239). Dr. Pollack noted that Plaintiff has spent 30 days in jail for prescription fraud and four years in jail for bank robbery. (AR 241). Plaintiff admitted a history of drug and alcohol abuse. (AR 242).

1  Plaintiff indicated to Dr. Pollack that she does not believe
2 she can work because of chronic fatigue, headaches, leg pain and
3 memory loss. (AR 239). However, it is noted in the report that
4 Plaintiff is responsible for her eight-year-old daughter and does
5 her own household chores, such as washing dishes, making beds,
6 dusting, sweeping and washing clothes. (AR 240). The results of
7 the MMPI-2 indicated that Plaintiff may have been overstating her
8 difficulties somewhat, but her F-scale was not so high as to
9 invalidate her testing. (AR 241). Dr. Pollack diagnosed a
10 dysthymic disorder, a somatoform disorder, NOS, and a personality
11 disorder with antisocial and dependent features. (AR 242).

12  On a mental medical source statement form, Dr. Pollack marked
13 that Plaintiff had only one marked limitation out of 20 areas of
14 functioning; with her ability to complete a normal workday and
15 workweek without interruptions from psychologically based symptoms
16 and to perform at a consistent pace without an unreasonable number
17 and length of rest periods. (AR 244). Dr. Pollack also marked
18 that Plaintiff had two moderate limitations, but otherwise found
19 that Plaintiff had no limitation or no significant limitation in
20 all other areas of functioning. (AR 243-245).

21  The ALJ noted Dr. Pollack's findings; in particular, his
22 report that Plaintiff was able to take care of her eight-year-old
23 daughter and all household chores. (AR 24, 25). The ALJ
24 indicated that Plaintiff has not undergone any significant mental
25 health treatment, other than medication treatment. (AR 24). In
26 addition, the ALJ indicated that Plaintiff's history of substance
27 abuse was a contributing factor, and Dr. Pollack did not separate
28 ///

out drugs and alcohol abuse when assessing Plaintiff's limitations. (AR 24). Therefore, the ALJ presumed that Plaintiff's limitations, absent consideration of substance abuse, would likely be less. (AR 24).

Without specifically rejecting Dr. Pollack's findings,[3] the ALJ gave more weight to the medical expert, Ronald M. Klein, M.D., who formed an opinion about Plaintiff's functioning ability with and without consideration of alcohol and drug abuse. (AR 25). Dr. Klein testified as a medical expert at the administrative hearing held on July 6, 2005. (AR 365-375). Dr. Klein testified that, considering alcohol abuse, Plaintiff had mild restrictions of activities of daily living, marked limitations with maintaining social functioning, and marked difficulties in maintaining concentration, persistence and pace. (AR 372-374). Dr. Klein stated that, without consideration of alcohol abuse and drug addiction, Plaintiff did not have a medically determination mental impairment. (AR 371).

Based on the reports of the above medical professionals, the ALJ concluded that Plaintiff did have a non-exertional limitation which diminished her occupational base; specifically, a moderate

///

---

[3] Plaintiff asserts that the ALJ erred by failing to provide rationale for rejecting Dr. Pollack's findings. (Ct. Rec. 13, pp. 19-20; Ct. Rec. 17, pp. 3-4). However, the ALJ did not reject Dr. Pollack's findings in this case. (AR 24, 25). The ALJ specifically considered his report which indicated that Plaintiff performed "a wide variety of activities including household chores and taking care of her child." (AR 25). The ALJ simply discounted the precise limitations imposed by Dr. Pollack, since Dr. Pollack failed to form his opinion "with and without consideration of alcohol abuse." (AR 24). The ALJ related that "it can be presumed that her limitations absent the consideration of substance abuse would be less" (AR 24) and accorded weight to the medical expert who assessed Plaintiff's functioning capacity with and without consideration of substance abuse.

1 limitation for consistently performing production level work
2 involving detailed instructions and procedures (AR 26), but did
3 not find any greater mental limitations.  The ALJ found that,
4 based on the medical expert's testimony, in conjunction with the
5 medical report of Dr. Pollack, Plaintiff did not have a severe
6 mental impairment absent the effects of drugs and alcohol.  (AR
7 22).  The undersigned finds that the weight of the record evidence
8 supports this finding.

9     The ALJ's RFC finding is in accord with the weight of the
10 record evidence in this case.  The record does not support more
11 restrictive non-exertional findings than Plaintiff being
12 moderately limited in her ability to consistently perform
13 production level work involving detailed instruction and
14 procedures.  (AR 26).  Accordingly, the ALJ did not err in so
15 finding in this case.

## CONCLUSION

17     Having reviewed the record and the ALJ's conclusions, this
18 Court finds that the ALJ's decision that Plaintiff is capable of
19 performing up to medium exertion work, including her past jobs as
20 a janitor/custodian/industrial cleaner and sandwich shop worker,
21 jobs existing in sufficient numbers in the national economy, is
22 supported by substantial evidence and free of legal error.
23 Plaintiff is thus not disabled within the meaning of the Social
24 Security Act.  Accordingly,

25     **IT IS ORDERED**:

26     1.  Plaintiff's Motion for Summary Judgment (**Ct. Rec.
27 12**) is **DENIED**.

28 ///

         2.   Defendant's Motion for Summary Judgment (**Ct. Rec. 15**) is **GRANTED**.

         3.   The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file.

    **DATED** this ___16th___ day of March, 2007.

                                    s/Michael W. Leavitt
                                    MICHAEL W. LEAVITT
                                    UNITED STATES MAGISTRATE JUDGE